UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF ANZ COMMODITY TRADING PTY LTD | Case No. 17-mc-80070-DMR<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**<br><br>Re: Dkt. No. 1 |

Applicant ANZ Commodity Trading Pty Ltd. filed an ex parte application seeking permission to issue subpoenas to five individuals and entities pursuant to 28 U.S.C. § 1782 to obtain discovery for use in foreign proceedings. [Docket No. 1 (Appl.).] Having considered the papers and the relevant legal authority, the court grants the application.

**I.  BACKGROUND**

ANZ Commodity Trading Pty Ltd. ("ANZCT") filed this application seeking discovery in aid of foreign proceedings that it intends to initiate regarding an alleged fraud relating to large purchases of nickel. ANZCT is a subsidiary of Australia-based financial institution Australian and New Zealand Banking Group Limited ("ANZBGL"). ANZCT, which is also based in Australia, provides financial services in the areas of stocks, bonds, options, and commodities trading. [Docket No. 1-3 (Hardaker Decl., May 26, 2017) ¶ 3.] In December 2015, ANZCT and ANZBGL entered into an agreement to purchase large quantities of nickel from ED&F Man Capital Markets Limited ("MCM"). Under the parties' agreement, MCM had the option to repurchase the nickel under 31 separate purchase contracts. *Id.* at ¶ 4 Ex. 1. MCM, in turn, had made back-to-back purchases of the same nickel from two Hong Kong companies, Come Harvest Holdings Limited ("Come Harvest") and Mega Wealth International Trading Limited ("Mega Wealth"). Under the terms of these purchases, Come Harvest and Mega Wealth had the option to repurchase the nickel

from MCM. If any party did not exercise the repurchase option, then the respective purchaser (either MCM or ANZCT) would be free to sell the nickel on the open market. *Id*. The nickel subject to the purchase contracts was stored at all times in warehouses in Singapore, Malaysia, and South Korea, and possession was to be transferred by the physical delivery of warehouse receipts between Come Harvest or Mega Wealth and MCM, and between MCM and ANZCT. *Id*. at ¶ 5. The warehouse receipts were issued by a Singapore-based warehouse operator, Access World Logistics (Singapore) Ptd Ltd ("AWS"). Title to the nickel was to pass between entities upon payment. *Id*. at ¶¶ 5, 6.

During the course of the nickel trades at issue, warehouse operator AWS issued 84 receipts between April 27, 2016 and September 30, 2016. Each receipt represented a specific quantity of nickel. *Id*. at ¶ 7. AWS issued 83 of the 84 receipts to the order of Straits (Singapore) Pte Ltd, which allegedly endorsed the receipts and delivered them to either Come Harvest or Mega Wealth. Come Harvest and Mega Wealth, in turn, endorsed their receipts and delivered them to MCM, which then endorsed and delivered them to ANZCT. AWS issued the 84th and final receipt to the order of Genesis Resources Inc. ("Genesis"), a California company, which in turn endorsed the receipt to Come Harvest. Come Harvest then endorsed the receipt to MCM and, in turn, to ANZCT. *Id*.

In January 2017, after taking steps to sell the nickel on the open market, ANZCT learned from AWS that 83 of the 84 receipts had been cancelled because AWS had already received 83 authenticated receipts for the same nickel from third parties. In other words, nearly all of the receipts in ANZCT's possession were fraudulent. *Id*. at ¶ 9. AWS had authenticated and accepted as genuine only one of the 84 receipts- the receipt AWS had issued to the order of Genesis, which was the subject of a purchase contract between Come Harvest and MCM. *Id*. at ¶¶ 9, 17, Exs. 2, 3. According to ANZCT, it "has received what are likely to be 83 forged [r]eceipts from MCM, which in turn received those forged [r]eceipts from Come Harvest and Mega Wealth." *Id*. at ¶ 10.

Although MCM has been paid in full, ANZCT states that it has no reason to suspect that MCM engaged in any fraudulent activity, and believes that any forgery of the receipts took place prior to their delivery to MCM. *Id*. at ¶ 11. ANZCT and MCM have been cooperating to identify

2

those responsible for the fraud and pursue foreign court actions to recover the monies ANZCT is owed. ANZCT states that it "has every intention of pursuing causes of action" against Come Harvest and Mega Wealth, which are both incorporated in Hong Kong, "together with other identified fraudsters, once their identities are known." *Id*. at ¶ 12. To that end, ANZCT has filed applications in Hong Kong courts for pre-suit discovery, seeking discovery from banks used by Come Harvest and Mega Wealth to make and receive remittances related to the fraudulent nickel transactions. *Id*. at ¶ 13. ANZCT represents that it is also pursuing pre-suit discovery in Singapore. *Id*. at ¶ 14.

According to ANZCT, discovery obtained from DBS Bank (Hong Kong) Limited ("DBS") in Hong Kong shows substantial payments between Come Harvest and Mega Wealth. The discovery also shows substantial payments from Come Harvest to entities and individuals located in the United States in 2016, including Genesis, the original order party for the sole legitimate warehouse receipt; Genesis KingHwa LLC ("Genesis KingHwa"); East West Bank, whose name appears as the beneficiary bank on all 31 outward remittances from Come Harvest to either Genesis or Genesis KingHwa; and an individual named Steven Kao. *Id*. at ¶¶ 13, 16, Exs. 5-7. For example, Genesis received a total of $151,306,802.00 from Come Harvest between May 13, 2016 and October 13, 2016. *Id*. at ¶ 16, Ex. 7. ANZCT states upon information and belief that Steven Kao was Genesis's CEO in 2016 and that he introduced MCM to Come Harvest and Mega Wealth. Mr. Kao received $313,867 on October 14, 2016 from Come Harvest. *Id*. at Ex. 6. Further, ANZCT states upon information and belief that Genesis KingHwa, which received $500,000 from Come Harvest in May 2016, is owned by Mr. Kao's niece, Melinda Kao. *Id*. at ¶¶ 17, 18, Ex. 5; Weisburg Decl., June 5, 2017, ¶¶ 12, 15, Exs. 9, 11. ANZCT presents evidence that Genesis and Genesis KingHwa are California entities located at the same business address in San Mateo, California, which is in the Northern District of California, and that Steven Kao and Melinda Kao reside within this district. Weisburg Decl. ¶¶ 11, 13-16, Exs. 8, 10. Further, East West Bank is registered to do business in California and has more than two dozen branches in this district. *Id*. at ¶ 17, Ex. 12.

ANZCT asserts that based on "the interrelationships and the timing of the remittances," it

3

believes that Genesis, Genesis KingHwa, their principals, and East West Bank will have "highly relevant information" regarding the events that led to its losses. Hardaker Decl. ¶¶ 20, 22. It seeks leave to propound subpoenas to Steven Kao, Genesis, Genesis KingHwa, Melinda Kao, and East West Bank (together, the "witnesses") for documents and testimony relevant to ANZCT's anticipated claims. *Id*. at ¶ 20; *see also* Weisburg Decl. Exs. 1-7 (proposed subpoenas).

## II. LEGAL STANDARD

Applicants seek discovery pursuant to 28 U.S.C. § 1782, which states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (citation and quotations omitted).

A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Ecuador*, 2010 WL 3702427, at *2

4

(citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

## III. DISCUSSION

### A. Authority to Issue Subpoena

The court has reviewed ANZCT's request and determines that the statutory requirements of section 1782 have been satisfied. First, ANZCT has established that Genesis, Genesis KingHwa, Steven Kao, Melinda Kao, and East West Bank reside and/or are found in this district. Second, the requested discovery is for use in proceedings that ANZCT is preparing to initiate before foreign tribunals in Hong Kong and other jurisdictions where the alleged perpetrators of the fraud may be found. It is of no import that ANZCT has not yet filed suit, as "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 259 (rejecting view "that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent;'" they need only be "within reasonable contemplation."). Finally, the court concludes that ANZCT qualifies as an "interested person" as it will be a party to the anticipated litigation.

### B. Discretionary Factors

Having concluded that it has the authority to issue the subpoena, the court turns to the question of whether the discretionary factors identified by the Supreme Court weigh in favor of or against issuance of the subpoena.

With respect to the first discretionary factor, the Supreme Court has noted that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

5

nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264 (internal quotations and citations omitted). Here, ANZCT asserts that it does not presently intend that any of the witnesses will be named as parties to its anticipated foreign proceedings; thus, this factor weighs in ANZCT's favor.

As to the second factor, the nature and receptivity of the foreign tribunal, ANZCT avers that there is no indication that Hong Kong courts would not be willing to consider the information sought by the requested discovery. It cites cases in which courts have granted section 1782 discovery for use in Hong Kong courts. *See, e.g., In re Mak*, No. C 12-80118 MISC SI, 2012 WL 1965896, at *2 (N.D. Cal. May 31, 2012). With respect to the third discretionary factor, there is nothing to suggest that ANZCT is attempting to circumvent foreign proof-gathering restrictions.

Finally, the discovery sought does not appear to be unduly burdensome and appears to be appropriately tailored. ANZCT's requests for documents seek information regarding the remittances received by each witness and the relationships between the witnesses and between the witnesses and Come Harvest and Mega Wealth. The discovery sought is also temporally limited; most requests and topics seek information from April 2016 to the date of the subpoenas, with some requests and topics seeking information from December 8, 2015, the date of the original agreement between ANZCT and MCM. Weisburg Decl. Exs. 1-7. These findings do not preclude the witnesses from contesting the subpoenas. The Ninth Circuit has held that applications for subpoenas pursuant to section 1782 may be filed ex parte because "[t]he witnesses can . . . raise[ ] objections and exercise[ ] their due process rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976). The witnesses shall therefore have thirty (30) calendar days after the service of the subpoenas to contest them. The return date on the subpoenas must be set at least 30 days after service.

**IV. CONCLUSION**

For the foregoing reasons, the court grants ANZCT's application. ANZCT may serve the

subpoenas attached to the Weisburg declaration.

**IT IS SO ORDERED.**

Dated: August 4, 2017



_____
Judge Donna M. Ryu
United States Magistrate Judge